JEFFERSON AMMONS, appellant, *vs.* THE PEOPLE, use of &c., appellees.

*Appeal from Clinton.*

An order of a Probate Court, directing a guardian to pay over to his successor a certain amount in his hands, belonging to the ward, is conclusive upon the guardian, unless the order can be impeached for fraud or collusion.

William C. Neely, as guardian, was ordered by the Probate Court to give supplemental security on his bond, already executed. Ammons signed and sealed said bond as such security. Held, that Ammons became liable as an original obligor.

Debt on bond brought in the name of The People to use of Hoke, guardian, &c., against Ammons, who was one of the sureties upon a guardian's bond. The case came on to be heard at

Ammons *vs.* The People.

May term, 1849, before Underwood, Judge, and a judgment was rendered for plaintiff for $109 40. Appeal by defendant.

S. Breese and G. Kœrner, for appellant.

T. J. Lecompte, for appellee.

Opinion by Mr. Justice Caton:

This action was commenced against one of the sureties, upon a guardian's bond, dated in 1837. And the only breach assigned is, that the guardian refused to pay over to his successor the sum of $86 83, in obedience to an order made on the 9th day of January, 1845, by the Probate Court of Clinton county. The defendant filed several pleas. To the second and fifth of which, a demurrer was sustained; of which the appellant now complains.

The second plea denies that any money ever came to the hands of the guardian, belonging to the ward. This plea is insufficient. That question had already been tried by a Court of competent jurisdiction, which had determined and adjudged that the guardian was liable to pay over to his successor the sum of $86 83, either for money received, or effects unaccounted for, belonging to the ward. The plea may have been true, and the adjudication still proper and just. He may have received effects other than money to that amount, for which he had not accounted. This was a lawful order of that Court, which, by the very terms of the condition of the guardian's bond, his sureties undertook that he should comply with. This was an adjudication obligatory as well upon the sureties as upon the guardian himself; unless, indeed, they could impeach it for fraud or collusion.

In the fifth plea, the defendant avers that he was not originally a party to the bond, but that, on the 16th of January, 1844, "the Court of Probate made an order on the said William C. Neely, guardian as aforesaid, requiring him, the said Neely, to give supplemental security on said bond, signed and executed as aforesaid." He then avers that on that day "he signed and sealed said bond as supplemental security as aforesaid." The plea then further avers, that Neely had faithfully discharged his duties as guardian, and had rendered a just account of his guardianship, from time to time, to the Probate Court as required, and had complied with all the lawful orders of the Court, relative to the goods and chattels of the ward that came to his hands since the

last mentioned day; and that neither at the time when the defendant executed the bond, nor subsequently, had the guardian any money or effects in his hands belonging to the ward. The sufficiency of this plea depends upon the question, whether the defendant became liable as an original obligor. That such was the intention of the parties, and the legal effect of the undertaking, we have no doubt. The guardian, with certain sureties, had, in 1837, executed this bond, and in 1844 he was required, not to give a new bond with other sureties, but to give supplemental security on this bond, and, in obedience to that order, the defendant executed and became a party to the old bond, without any change, either in its date or in any other respect. This clearly manifests the intention, that the liability of the defendant should be the same as if he had signed it at the same time with the other parties to it. It is but a question of intention, to be gathered from the nature of the transaction. The bond, at the time he executed it, was already an existing obligation, and had been for years binding upon the guardian and his other sureties, and we are not to suppose that they intended to create a new and independant obligation so that the same instrument would impose different liabilities upon the various parties to it. Indeed, unless we hold the liability of the defendant to be that of an original obligor, we must decide, in effect, either that the bond ceased to be obligatory upon the original parties, or that it never was binding upon the defendant. Necessarily the bond must impose the same obligations upon all the parties that are bound by it. Suppose the other obligors had been sued in this action with the present defendant, this plea, if sustained, would have been as available to them as to him, for in this form of action the recovery must be against all of the defendants or none—unless where a personal defence is interposed, such as infancy or bankruptcy; and the same amount must be recovered against all. Indeed, the execution of this bond by the defendant, was entirely a nugatory act, or else his liability upon it is the same as if he had executed it at the same time with the others, and is identically the same as theirs. The demurrer was properly sustained to both these pleas. There is no other question presented by this record, worthy of serious consideration. The judgment of the Circuit Court is affirmed, with costs.

                              *Judgment affirmed.*