JOSEPH REAM, Guardian, etc.
v.
EDMUND LYNCH ET AL.

ESTOPPEL—REPORT BY GUARDIAN.—Where a guardian made report to the county court of the amount of money on hand belonging to his ward, and such report was approved by the court and an order entered that he pay over such balance to his successor in office, such order is conclusive upon him and the sureties on his guardian bond.     They are estopped from denying the truth of the report.

ERROR to the Circuit Court of Logan county; the Hon. A. G. BURR, Judge, presiding.     Opinion filed September 17, 1880.

Messrs. BEASON & BLINN and Messrs. HART & JAMES, for

plaintiffs in error; that parties to guardian's bonds are governed by the same principles that apply to bonds of administrators, cited Underwood's Stat. 1878, Chap. 3, § 23; Chap. 64, § 7; Brandt on Suretyship, § 442.

That which estops a principal will estop the surety: Bigelow on Estoppel, 442; Brandt on Suretyship, § 359.

An officer making a report required by law, is estopped from denying the truth of such report: 1 Greenl. Ev. § 179; Chicago v. Gage, 12 Chicago Legal News, 234.

The order on the guardian to pay over to his successor the balance in his hands, is conclusive on him: Ammons v. The People, 11 Ill. 6.

The principal and sureties on an official bond are liable for a breach of the covenants in the bond: Pinkstaff v. The People, 59 Ill. 148.

A party to a judgment will not be allowed to contradict the record: Bigelow on Estoppel, 19; Lane v. Bommelman, 17 Ill. 95; Weiner v. Heintz, 17 Ill. 259; Goudy v. Hall, 30 Ill. 109; Elston v. Chicago, 40 Ill. 514.

A purchaser of trust property, with notice of the trust, will hold the same for the *cestui que trust:* 1 Perry on Trusts, § 217.

The trust fund may be followed so long as it can be identified: 1 Perry on Trusts, § 735.

Messrs. BEACH & HODNETT, and Messrs. HOBLITT & STOKES, for defendants in error; that the liability of a surety must be strictly construed, cited Stull v. Hance, 62 Ill. 52; McLain v. The People, 85 Ill. 205; The People v. Tompkins, 74 Ill. 482; Miller v. Stewart, 9 Wheat. 680; Leggett v. Humphrey, 21 How. 75; Smith v. United States, 2 Wall. 235; McIntyre v. Trustees, 3 Bradwell, 77; Governor v. Lagow, 43 Ill. 134.

Every intendment is in favor of a surety: Pope v. Chalmers, 60 N. Y. 154; Chase v. McDonald, 7 Har & J. 160; Law v. East India Co. 4 Ves. 824; Lang v. Pike, 27 Ohio St. 498; Trustees v. Otis, 85 Ill. 179; Brandt on Suretyship, 107.

Sureties on official bonds are liable only for defaults occurring after the execution of the bond: McIntyre v. Trustees, 3

Bradwell, 77; McLain v. The People, 85 Ill. 205; Vivian v. Otis, 24 Wis. 518; Myles v. United States, 1 McLean, 493; Farrar v. United States, 5 Pet. 383; United States v. Boyd, 15 Pet. 206; Inhabitants, etc., v. Randall, 105 Mass. 295; Patterson v. Inhabitants, etc., 33 N. J. 255; Jeffers v. Johnson, 18 N. J. L. 382; Mayer v. Van Horn, 2 Harr. 190; Inhabitants v. Benjamin, 7 Cent. Law Jour. 157; Lowry v. State, 8 Cent. Law Jour. 325; Townsend v. Everett, 4 Ala. 607; Hilton v. Lane, 43 Tex. 229; Mahaska Co. v. Ingalls, 16 Iowa, 261; Warren Co. v. Ward, 21 Iowa, 84; School District v. McDonald, 39 Iowa, 564.

A surety on an official bond can always impeach a settlement of his principal for fraud or collusion: Freeman on Judgments, § 250; Mfg. Co v. Worster, 45 N. H. 110.

A surety of an officer is not liable for money received by his principal out of the line of his duties: People v. Pennock, 60 N. Y. 421; State v. White, 10 Rich. 442; Leigh v. Taylor, 7 Barn. & Cres. 491; Nolley v. Calloway Co. Ct. 11 Mo. 447.

A party to a suit is competent to testify where the adverse party sues as administrator, when called by the adverse party: Rev. Stat. 1874, 488; Resuman v. Buckmaster, 85 Ill. 403.

When one of two innocent parties must suffer, the loss should fall upon him whose acts enabled the fraud to be committed: Butters v. Haughwort, 42 Ill. 18; M. C. R. R. Co. v. Phillips, 60 Ill. 190; Brundage v. Camp, 21 Ill. 330.

DAVIS, J.    Robert Applegit died intestate, in 1864, seized in fee of a piece of land in Logan county, and leaving Edward Applegit his only heir-at-law.    Jacob Hammon was appointed guardian of Edward Applegit.

In 1875, under an order of the county court, Hammon, as such guardian, sold the land belonging to Edward for $2,366.55. Shortly afterwards Hammon died testate, and Ezekial French was appointed and qualified as his executor, and on the 22d July, 1876, after such appointment and qualification, French, as such executor, filed in the county court a full and perfect inventory of all the estate of the deceased, in which he reported as cash on hand at the time of decease $1,432.86, and good

notes to the amount of $1,755.82. This inventory was approved by the court on the same day.

On the 28th June, 1877, French, as such executor, filed his report in said court of his acts and doings as executor, in which he charges himself with the total amount of money received and collected, $4,158.54, and he asked to be credited with the following payments to creditors of the deceased, as per vouchers submitted, among which appears: Paid E. Lynch, guardian, $3,188.14, which report was on the same day approved by the court.

On the 22nd day of December, 1875, Edward Applegit, who was then fifteen years of age, appeared before the county court, and made choice of Edmund Lynch as his guardian, and thereupon Lynch was appointed, and on the 7th of June, 1877, gave bond, was qualified, and entered upon the discharge of his duties as such guardian.

The bond was executed by the guardian with William Foggarty and John Thompson as his sureties, and was conditioned " that if the guardian should faithfully discharge the office and trust of such guardian according to law, and should make a true inventory of all the real and personal estate of the ward that shall come to his possession or knowledge, and return the same into the County Court of Logan county at the time required by law, and manage and dispose of all such estate according to law, and for the best interests of said ward, and faithfully discharge his trust in relation thereto,   *   *   *   * and render an account on oath of the property in his hands, *   *   *   and of the management and disposition of all such estate within one year after his appointment, and at such other times as shall be required by law, or directed by the court ; and upon removal from office, or at the expiration of his trust, settle his accounts in said court, or with his ward or his legal representatives, and pay over and deliver all the estate, title papers and effects remaining in his hands, or due from him on such settlement to the person or persons lawfully entitled thereto, then this obligation shall be void, otherwise to remain in full force and virtue.

On the 28th day of June, 1877, Edmund Lynch, as such

guardian, in the county court recovered a judgment against Ezekiel French, executor of the estate of Jacob Hammon, deceased, for $3,554.66.

On the 29th June, 1877, Lynch filed an inventory as such guardian, in the county court, subscribed and sworn to by him, in which he shows: cash on hand received this day from Ezekiel French, executor of Jacob Hammon, deceased, $3,138.14, a balance due from the estate of Jacob Hammon, $416.52.

On the 6th of February, 1878, the following order was made by the county court: "That Edmund Lynch, guardian of Edward Applegit, had been ordered to give additional bond by January, 1878, and having failed to comply with the order of the court, it is ordered by the court that his letters of guardianship be revoked, and Lynch ordered to pay over and deliver to his successors, all moneys, papers, chattels and effects in his hands as guardian, and file a voucher in this court.

"Joseph Ream appointed guardian of Edward A. Applegit, upon his filing bond in the sum of $7,000, which was done in open court, and bond approved and letters of guardianship issued."

On the 26th of February, 1878, Lynch filed in the county court his report as such guardian, subscribed and sworn to by him, of his acts and doings from July 25th, 1877, to date, in which he charges himself with balance on hand at date of last report:

July 26th, 1877.................................$3,138.14
Interest on same to date........................    109.97

Total received .................................$3,248.11

He further reported that he had taken a note from the security on the bond of Jacob Hammon as late guardian of said ward, for $416.52, being the balance due, and asked consent to turn over said note to Joseph Ream. This report was also approved by the court.

After his removal, Lynch, on the 18th of April, 1878, filed in the county court his further report of his acts and doings as such guardian, from July 26th, 1877, to date, in which he

charges himself with amount received from E. French, executor, 26th July, 1877.............................$3,138.14

Interest on same................................. 141.21

February 1, 1878, amount collected from Montgomery

security on Hammon's bond as guardian......... 416.52

Interest on same............................... 6.24

Total.......................................$3,702.11

And asked credit for amount paid out............. 57.68

Balance due 18th April, 1878............ ....$3,648.23

This report was approved, and it was ordered by the court that E. Lynch, guardian, pay the balance in his hands to Joseph Ream, present guardian of said ward, and that upon filing vouchers for the same he be discharged.

Joseph Ream, as such guardian, demanded the money due his ward from Lynch, and, being unable to obtain it, commenced an action of debt on the 29th of April, 1878, in the Circuit Court of Logan county, against William Foggarty and John Thompson, on the said bond, executed by Lynch as guardian of Edward Applegit. A few days before the commencement of this action William Foggarty had filed his bill in chancery in said court against Edmund Lynch, Joseph Ream, Ezekiel French et al., charging, among other things, that Hammond, at the time of his death, was insolvent, and was then indebted to his ward $3,554, which he had in his life-time converted to his own use and was unable to repay by reason of his insolvency. That French, as executor of Hammon, acting under the advice and counsel of Lynch, his attorney, charged himself with $3,138.14, as assets in his hand as such executor when he and Lynch knew he had no part of such sum of money. That Lynch, who was also attorney of Hammon in his life-time, received from Hammon and the purchasers of the land belonging to Edward Applegit the money and notes given for the land, and the other money derived from rents and profits of the land, and converted the same to his own use, and had never repaid it to Hammon. That Lynch, as the attorney of French, with full knowledge of the facts, to cover his own

Ream v. Lynch.

misdoings, made out and advis ed French to file the inventories, reports and accounts as executor which were approved by the court.    That French's report drawn by Lynch, charging French with paying Lynch, as guardian, $3,138.14, was false.    French never having paid that sum or any part thereof.    That Lynch's report charging himself as guardian with having received $3,-138.14 from French was false, and that he never received such sum as guardian, but only the note of $416.50; and praying for an account of his liability as surety; that such reports and orders be set aside; that he be relieved from payment of $3,-138.14, and for general relief.    On the 16th of September, 1878, William Foggarty filed a supplemental bill in the case against Joseph Ream as guardian, setting up the commencement of the said action of debt on said bond of Edmund Lynch as guardian, and praying for an injunction to restrain the prosecution of such suit and the commencement of any other proceeding to obtain a judgment on such guardian's bond of Edmund Lynch. An injunction was issued as prayed.

Answers were filed to bill and supplemental bill, and cross-bills were filed and answered, and on the hearing below the court, among other things, decreed that the injunction issued should be made perpetual, and this appeal is taken to reverse that decree.

We do not deem it necessary to notice more than one of the errors assigned by the plaintiff in error, and that is that the court below erred in not rendering a decree dissolving the injunction enjoining the suit upon the bond of E. Lynch.

On such hearing the court permitted French and Lynch to testify as witnesses for Foggarty, against the objection of Ream, and their testimony was the only evidence given to sustain the charges in the bill that on the settlement between French and Lynch, no money or effects was paid by the former to the latter, and that Lynch never received the money from French as reported by him, as guardian, to the court. We do not deem it necessary for the purposes of this case to determine the question of the competency of the executor and of the former guardian as witnesses; for even if competent, the testimony given by them would not sustain a defense to the action on the guardian's bond of Lynch.

The order of the county court approving the report of Lynch, as guardian, and ordering him to pay the amount reported to be in his hands over to his successor, is conclusive, and if not complied with entitles the person in whose favor it was made, to recover upon the guardians bond against principal and security. It was an adjudication obligatory as well upon the sureties as upon the guardian himself, unless indeed, they could impeach it for fraud or collusion. Ammons v. The People, etc., 11 Ill. 6; Ralston et al. v. Wood, 15 Ill. 159.

There is no pretense in this case that Reams was guilty of any fraud or collusion, and the fraud of French and Lynch cannot be set up by the sureties of Lynch; nor would such testimony sustain a defense, for conceding that the reports of Lynch were false, his sureties would not be permitted to show that the guardian did not have the money reported by him to be in his hands. It was the duty of the guardian to collect from the executor the amount of money the latter reported to be in his hands, on the settlement of his accounts; and if the guardian reported to the court that he had received such amount, and continued to report from time to time, under oath, as required to do by law, that he had the same in his hands, both he and his sureties should be concluded from denying that this money did actually come into his hands. Roper et al. v. Sangamon, Lodge No. 6, 91 Ill. 519; City of Chicago v. Gage, N. W. Reporter, Ill. Supplement, Vol. 1, 365; Cawley v. The People, 95 Ill. 249; Morley v. The Town of Metamora, 78 Ill. 394.

But, independent of these questions, the case made by the record shows no defense which could be successfully interposed in the action at law enjoined. One of the conditions of the bond, voluntarily entered into by the sureties of Lynch, is " that if the guardian should, upon removal from office or at the expiration of his trust, settle his accounts in said court, or with the ward or his legal representatives, and *pay over* and deliver all the estate, title-papers, and effects remaining in his hands, *or due from him on such settlement* to the person or persons lawfully entitled thereto then the obligation to be void," etc. One obligation assumed by the guardian by his

bond was, that upon his removal from office, he would pay over to his successor in office the estate found due from him on the settlement of his account, and the obligation assumed by his sureties was that if the guardian failed to do this, they would pay the amount so found due by the guardian. This condition of the bond was broken on the failure of the guardian to pay the amount found due, and nothing short of this payment will relieve the sureties from their liability. It appearing that Foggarty has no defense to the action at law, the injunction granted staying such proceeding should have been dissolved, and the court below decreeing otherwise, the decree must be reversed, and the cause remanded with instructions to the court to dissolve the injunction and dismiss the several bills and cross-bills filed in the cause.

Decree reversed.