### Maria C. Baum v. Bernhard Hartmann, et al.

1. GUARDIAN'S BOND—*when recovery cannot be had upon.* Recovery cannot be obtained against the sureties upon a guardian's bond upon the ground that the guardian had never settled where it appears that the plaintiff upon arriving at full age, with full knowledge of her rights, without fraud or misrepresentation, and contrary to the advice of the judge of the court of probate, receipted in full to her guardian without having received the money due her, where, by reason of such action, the sureties upon such bond were induced to surrender security of the guardian then in their hands.

Bill in chancery. Error to the Circuit Court of St. Clair County; the Hon. R. D. W. HOLDER, Judge, presiding. Heard in this court at the February term, 1905. Affirmed. Opinion filed September 8, 1905.

MILLER, WINKELMANN & BAER, for plaintiff in error; JAMES M. DILL, of counsel.

L. D. TURNER, for defendants in error.

MR. JUSTICE MYERS delivered the opinion of the court.

At the September term, 1903, of the St. Clair Circuit Court, Maria C. Baum, plaintiff in error, filed her bill in chancery by which it is represented that in August, 1894, Simon Baum, father of complainant, was appointed by the County Court of St. Clair County, guardian of complainant and her younger brother; that he gave bond as such

guardian in the sum of $6,800, with Bernhard Hartmann and Jacob Spies as sureties, which was approved by the court; that said guardian and said surety Jacob Spies have since died; that complainant was eighteen years of age June 1, 1899; that on June 8, 1899, the said guardian made and filed with the court his final report as guardian of complainant, by which it appears that the balance in hand due complainant was $1,700; that the report was approved and upon a receipt in full for balance and entry of appearance in writing by complainant, being presented and filed, the court entered an order discharging the guardian. It is further represented that complainant did not receive the money for which the receipt was given or any part thereof, and that the total amount, $1,700 and interest thereon, is still due and unpaid; that when she signed the receipt she was unadvised of her rights in the matter and did not know the full import and meaning of her act; and that the estate of her father and guardian is insolvent. Bernhard Hartmann and Elizabeth Spies, administratrix of the estate of Jacob Spies, deceased, defendants in error, are made parties defendant.

Defendants answered separately, admitting the allegations in the bill except the allegation that complainant was unadvised of her rights in the matter of signing the receipt and did not know the full import and meaning of what she did, and as to that allegation defendants answer that they have no knowledge and therefore neither admit nor deny the same. Defendants further answering say, that on June 8, 1899, when complainant gave her said receipt, her guardian, the said Simon Baum, was seized of real estate then worth double the sum due complainant; that complainant took no steps to collect from her guardian the balance due on final report for which she gave the said receipt in full payment and satisfaction of her claims against the guardian, thereby precluding any action by defendants as sureties to subject the said real estate to the payment of the balance due complainant; that she permitted the said guardian to sell and convey said real estate and put it beyond the reach

of defendants as sureties on said guardian's bond. Replication was filed, the cause heard by the court and a decree dismissing the bill for want of equity was entered. The record is brought by writ of error to this court for review. The errors assigned bring in question the sufficiency of the evidence to justify the decree. Whether the decree should stand or be reversed depends upon the credit given to the testimony of the county judge by whom the order of discharge was entered.

We find nothing in the record to impeach or discredit the testimony of the county judge except the contradiction by plaintiff in error, and as to which of these witnesses is entitled to the greater credit and may be believed, the chancellor who heard the evidence had better opportunity than we to determine. From a careful reading of the evidence we are satisfied with the court's findings of material facts recited in the decree. It appears from the evidence and the decree so finds, that complainant was present in court when her guardian presented his final report and her receipt in full for the balance of $1,700 shown to be due her; that the judge then and there fully explained to her the effect of giving the receipt and the discharge of her father as guardian; that he told her that her father was insolvent and if discharged as guardian she would have no recourse for her money; that virtually she was thereby releasing all claims for the money. He told her she was making her father a present of the money. She stated that she fully understood it, and though dissuaded by the judge, insisted upon the order of discharge. With the facts thus established by the evidence the plaintiff is without equitable right or claim against the sureties on her guardian's bond. She was *sui juris*, acting in her own right and capacity, fully advised of her rights and the consequence of what she was about to do. Knowing that she would have no recourse for her money, without any undue or improper influence apparent, she voluntarily and against the advice of the county judge insisted upon the approval of the final report and order of discharge. It appears that

Baum v. Hartmann.

she can read and write and there is no suggestion of any lack of intellect or want of understanding. There is no direct allegation or charge of fraud on the part of her guardian, nor does it appear that in any way she was influenced by misrepresentations by her father or any one else. It is scarcely to be credited that in the four years intervening the settlement and the filing of her bill, that she did not discover the imposition which it is now claimed was practiced upon her. She knew that her father was guardian, that he had money belonging to her, that he was insolvent and could not pay her, and it may fairly be presumed that her interest and concern in the matter would lead naturally to an inquiry as to how the settlement with her father had been made and what, if any, recourse she had. Such inquiry would have revealed the condition of the guardianship and the order of discharge. It would then have been her duty, immediately, to institute proceedings to vacate the order. The long delay, especially after the death of her father and guardian in January, 1902, is a circumstance corroborating the testimony of the county judge that she knew and fully understood all that was done in the matter of settlement and discharge of her guardian and his bondsmen. It is in the evidence and findings of the court, substantially, that at the time of the settlement the sureties held an indemnifying mortgage on certain real estate then owned by the guardian, and that it was complainant's stated purpose and intention in securing the discharge of her guardian to prevent proceedings by the sureties or a foreclosure of the mortgage, and to place her father in a position to enjoy free and unmolested the continued use and possession of the said real estate. It is rightly contended by counsel for defendants in error that the effect of the discharge, so long as it remained unrevoked, was to prevent proceedings by the sureties under the mortgage or otherwise to pay or collect the money for complainant and indemnify themselves. After his discharge as guardian plaintiff's father deeded the real estate mentioned to his wife, plaintiff's stepmother, for a consid-

eration of $1,500, and the title was in her when this bill was filed. The settlement and order of discharge appearing of record, the sureties no longer had claim or lien under the mortgage against the said real estate for indemnity against loss by default of plaintiff's guardian. That it is the duty of the surety on a guardian's bond to see that the principal deals honestly and fairly with his ward and that the purpose of the bond and the sureties' obligation is to secure and protect the ward against the fraud and imposition of a dishonest guardian, is a salutary doctrine which obtains in all the higher courts of this and other States. It is clearly stated and effectively applied in Gillett v. Wiley, 126 Ill. 310. With that doctrine we are in full sympathy and accord. But the Gillett case, cited by counsel for plaintiff, is so different in the facts from the case at bar that it is without controlling application here. In that case the ward was not before the court nor was he cited to appear. He had no notice of the proceedings for a discharge of the guardian. There had never been any kind of settlement between the guardian and ward. The guardian obtained the ward's receipt by fraud and circumvention. The ward was the victim of fraud and deception. There was no voluntary act on his part in procuring the discharge. He knew nothing of it. He signed by mark a paper represented by his guardian to be a note. He was reared in ignorance, of vicious habits and afflicted with nervous disease that affected his mental faculties. None of these conditions or circumstances are found in the record under consideration.

We are of opinion that the equities in this case are with the defendants in error and therefore affirm the decree of the Circuit Court.

*Affirmed.*