THE STATE OF KANSAS v. JACKSON ARMELL.

1. CRIMINAL LAW; *Complaint; Practice.* In a complaint before a justice of the peace for an offense created by statute, it is sufficient, as a general rule, to describe the offense in the words of the statute. To this rule there are some exceptions, but this is not one of the excepted cases,

2. ———— *Prosecutions for "Certain Trespasses;" Section Construed.* Section one of ch. 113, Gen. Stat., provides redress in two ways for certain wrongs done to the property of individuals—one, by a criminal prosecution; the other, by a civil action to recover damages. In the civil action the allegation of *value* is necessary as a predicate for testimony, and also to determine jurisdiction. In the criminal prosecution it is not necessary for either purpose. The two proceedings are not in anywise dependent upon each other. Either or both methods may be resorted to, as may be deemed best.

3. RAILROAD; *Right of Way—Condemnation of Land.* The condemnation of 100 feet in width as a right of way for a railroad, gives the railroad company no right to enter upon and dig ditches through the adjacent lands through which the right of way has been so condemned, even though such ditch is necessary to the proper drainage and protection of the railroad.

4. ——— *Extent and Limitation of Condemnation.* The rights and easements acquired by a railroad company, by the condemnation of lands belonging to another for the purposes of their road, must be definitely and precisely shown in the proceedings. The condemnation proceedings must show what is taken, and what the land-owner parts with. Nothing is taken by implication or intendment.

*Appeal from Chase District Court.*

DEFENDANT *Armell* was prosecuted criminally before a justice of the peace for a violation of the provisions of § 1, ch. 113, Gen. Stat., p. 1095. The complaint was filed February 27, 1871, and was as follows:

[TITLE AND VENUE.] "J. R. Blackshire being duly sworn deposes and says, that on the 13th day of February, 1871, one Jackson Armell, and one V. R. Blush, did, in the county of Chase, and State of Kansas, then and there dig up a large quantity of clay in which they nor either of them had no interest or right, the same being on land not their own, and on land belonging to said affiant, to-wit, the N.E.¼ of Sec. 7, in Township 20, of Range 7, in Chase county, Kansas."

The affidavit was signed and sworn to. *Armell* was arrested, tried, and convicted before the justice, whereupon he appealed to the district court. The proceeding was dismissed as to Blush. No new complaint was filed in the district court. At the April Term, 1871, defendant *Armell* moved to dismiss and quash the complaint, for " the reasons, 1st, that it does not state facts sufficient to constitute a public offense, and 2d, that there is no value stated for the property upon which the alleged trespass was committed." The motion was overruled. The case was then tried, and the jury returned a verdict of guilty. The defense was that the defendant committed the acts complained of in the service and employ of the Atchison, Topeka, & Santa Fe Railroad Co.; that such company had acquired the right of way over the lands mentioned in the complaint; and defendants

acts were committed in the exercise of rights so acquired. The facts are stated in the opinion. Motions for new trial, and in arrest of judgment were overruled, and judgment was entered on the verdict. The defendant appeals to this court.

*Martin, Burns & Case,* and *J. Safford,* for appellant:

1. The court erred in refusing to quash the complaint. There was no allegation of amount of damages done to the property. The statute makes it necessary to show the value of the property carried away: § 1, p. 1095. The allegation and proof are necessary, otherwise "treble damages" could not be arrived at; and before a criminal action could be maintained, a case must be stated upon which a recovery of damages alone could be had.

2. The court erred in not instructing the jury, that where a Railroad Company legally acquires the "right of way" over and across the lands of another, such company "has the right to make proper and necessary drains upon the lands of such owner, for the purpose of carrying the water from their road and preserving the same, whether such right is specifically mentioned or set out in the report of the commissioners or not."

To hold that the Company had the right to construct the ditch in question, so far as it was located upon the 100 feet of right of way, but that such right extended no farther, is to impose a limitation which must operate disastrously as against the Company, and probably as against the land-owner himself, by preventing a free flowing of water from the road and the land of such owner.

But it may be said that if such right is to be secured to the Company in this case, the commissioners should have so stated in their report, and the land required for drains should have been set off for such purpose. A sufficient answer to this proposition is to be found in the fact that, from the very nature of the circumstances surrounding the case, such a setting off would have been out of the power of the commissioners; they could not know just where drains might be found necessary, nor could any one else, until the road came to be constructed.

We then insist, that while such commissioners must have

considered such matters as those of drainage right of way over adjacent lands, etc., in a general way, and so as to have taken them into account upon their estimate of damages for the right of way through the complainant's land, and incidental, injury thereto by reason of the railroad, still they were not required to specially lay out or define in their written report just where such rights should be exercised, or to state the damages on account of such exercise, separately from the value of the land taken. The aggregate of valuation and damages fixed and reported by them, covers every item of injury. Pierce on Rlys., 168; Redfield on Rlys., 267; 2 Beasley, 199; 4 Rich., 107.

The right of way, and the necessary incident rights, having accrued to the Company by virtue of proceedings regularly had, the only remedy of the plaintiff was by appeal from such proceedings, and such remedy was and is full and ample. Pierce on Rlys., 168; 4 Ohio St., 688.

*Ruggles & Plumb*, for The State:

1. The affidavit or complaint was sufficient. It is in the words of the statute. This is good as a general rule. 14 Conn., 490; 3 G. Greene, 279; 5 Blackf., 156; 24 Ill., 26; 2 Cold.,(Tenn.) 232; 31 Mo., 343. Value need not be averred except where it is necessary to show the jurisdiction of the court, or to determine the punishment. 1 Scam., 122; 1 Bish. Cr. Proc., §§ 293, 294. The objection that the affidavit in this case does not allege the value of the clay dug up, is therefore of no force. The statute does not require it; and the value is not necessary either to determine jurisdiction or punishment. If the question of value is at all important, it is only as matter of defense.

2. The appellant claims that the condemnation of a right of way 100 feet in width through the lands on which the alleged trespass was committed, carries with it, as a necessary incident thereto, the right to take as much more as may prove necessary for the security of the road, and "the right of making proper drains" across adjoining lands, though that right is not mentioned in the report of the commissioners, and there is nothing to show that it was ever taken into account in the assessment

of damages. The particular purposes for which condemnation may be resorted to are specifically stated in § 81, ch. 23, Gen. Stat. There may be a route not exceeding 100 feet wide, unless for proper construction and security, "it shall be necessary to take more." The discretion as to what shall be taken is not that of the commissioners, but that of the company. The company is supposed to know what it wants at the time the condemnation is made. In this case the effect of appellant's defense is, that the 100 feet which had been condemned was not sufficient for the proper security of the road; so the company directed the appropriation, *vi et armis*, of 85 feet more. But having no legal right so to do, it affords no defense to the appellant.

The commissioners' report condemning land is the only evidence of what the railroad company has been permitted to take and of what the land-owner has been compelled to relinquish. 2 Gray, 580. To hold the opposite, would be in effect saying the railroad company might so construct its road as to require the use of other lands than those condemned, and by such voluntary act of its own create a justification for trespassing upon adjoining lands. Our statute broadly gives the company the right to take more than 100 feet whenever it should be necessary either for the proper construction or security of its road; to hold that this right passes as an incident to a condemnation of 100 feet is to say that the words of the statute are without meaning. Besides, grants of this kind being in derogation of common right are to be strictly construed; and in case of doubt, the doubt will be solved against the power claimed. 11 Ohio St., 228; 1 Redfield on Rlys., 234, and cases cited.

The opinion of the court was delivered by

KINGMAN, C. J.: This was a prosecution instituted under section one of chapter 113, Gen. Stat. The prosecution was originally instituted before a justice of the peace, upon a complaint consisting of an affidavit. The appellant having been convicted appealed to the district court, where he was again tried upon the complaint, and again convicted. From

this last judgment he appeals to this court.   The questions for determination are, first, the sufficiency of the affidavit; second, the extent and effect of the condemnation of the right of way for the Atchison, Topeka & Santa Fe Railroad Co. through the land of the prosecuting witness, Blackshire.

I. The case being in the district court on appeal, it was proper that it should be tried upon the original complaint, if that sufficiently stated the offense: § 22, ch. 83, Gen. Stat. The affidavit states the offense in the words of the statute. The offense is a misdemeanor created by statute.   In regard to such offenses it is a well-settled rule that it is sufficient to describe them in the words of the statute. · To this rule there are some exceptions; but as this case does not come within any of the exceptions it is not necessary to notice them here.   That the general rule is as we have stated, see *The United States v. Mills*, 7 Peters, 142, and *Whiting v. The State*, 14 Conn., 488, and cases there cited.   It is insisted that, as there was no allegation of value of the clay dug up by the defendant, the complaint is therein defective.   The offense does not in any way consist in the value of the thing injured. " It is uniformly and explicitly laid down that an averment of the value is unnecessary, excepting where it determines the jurisdiction or the punishment:" *Whiting v. The State*, supra. A statement of the value of the thing injured is not only not required by the statute, but its averment is not necessary in any way to apprise the accused of his offense, or to enlighten the court in fixing the punishment, or to establish jurisdiction. The statute referred to provides redress in two ways for certain wrongs done to the property of individuals; one, by a public prosecution; the other, by a civil action brought by the party injured.   In the latter case he recovers treble the value of the thing injured, broken, destroyed, or carried away; and it becomes necessary to allege a value, not because the statute requires it, but because the necessities of the case require it as a predicate for testimony, and a limit as to recovery, and also to determine jurisdiction. In the criminal prosecution it is not necessary for either pur-

*(margin note: 1. Complaint; statutory offense.)*

*(margin note: 2. Sec. 1 of ch. 113, Gen. Stat., construed.)*

pose, and its insertion is of no importance, and its omission of no consequence. The two proceedings are in no way dependent on each other, but either or both methods may be resorted to, as may be deemed best.

II. The other errors complained of arise from the instructions given and refused. To understand the questions involved a brief statement of the facts becomes necessary: The defendant, by direction of the Atchison, Topeka & Santa Fe Railroad Co., cut a ditch from their track eighty-five feet through the land of Blackshire. The ditch was necessary for the road to protect its embankments, and was no larger than the necessities of the road required to conduct the natural flow of the water, and straightened the natural channel of a small stream crossed by the railroad. It appears further, that the county commissioners had condemned the right of way through the land of Blackshire, 100 feet in width, and had made no other condemnation of the land. No mention was made in their report of any other right than this. No condemnation of any right to cut drains or ditches in the lands of Blackshire adjoining said right of way. Under this state of facts, if the road had the right to cut the ditch on Blackshire's land, then the instructions given were wrong, and and those refused should have been given. If the road had no such right, then the court properly gave the law to the jury.

*3. Railroad; right of way; condemnation of land.*

It is not doubted that the Railroad Company may obtain by purchase or condemnation as much land beyond the 100 feet as may be necessary for cuttings and embankments, and to make them secure, and grounds for side tracks, workshops, depots, and water stations, and so much as may be necessary to make proper water-drains for the security of the road. All these are necessary appendages of the road, without which it could not be properly constructed, or safely and successfully operated. But it does not follow, because these are necessary appendages of the road, that the company obtained them as rights incidental to its condemnation of the right of way 100 feet in breadth. On the contrary, when the rights or easements are taken by condemnation, the proceed-

*4. Condemnation of lands for drainage, and other purposes.*

ings must show definitely and precisely what is taken, and what the owner parts with. Nothing is taken by implication or intendment. The condemnation is, in itself, an arbitrary appropriation of the property of an individual, without his consent, for a public use, to be controlled by a corporation. When this is done it must as accurately state the exact extent of the appropriation as a deed, and beyond the limits thus ascertained and defined, nothing is taken. *Hazen v. The Boston & Maine R. R. Co.*, 2 Gray, 574. The land appropriated by the Railroad Company was just 100 feet in width, and no more. That is just what was condemned; what was paid for; and beyond that limit they obtained no right whatever, not even an easement which would authorize them to run a wheelbarrow over the adjacent lands to repair their road. If they needed more for drainage, or any other purpose necessary for the road, they must obtain it by purchase or condemnation, and make compensation therefor. It is insisted that as the application for the county commissioners to act under section 81, ch. 23, Gen. Stat., was not only for them to condemn lands for the right of way, but among other things to condemn the land necessary for making proper drains, that therefore the commissioners have considered such matters as those of drainage, and so have taken them into account in their estimate of damages for the right of way through the land of Blackshire, and as an incidental injury thereto by reason of the construction of the railroad. This is doubtless true so far as the drains are confined to the land taken; but if it is to be extended to a vague, uncertain, wandering right to make drains on another man's land, as their necessities may from time to time indicate, then indeed is the extent of a man's right over his own possessions in a most precarious condition. He would not find it in the report of the commissioners. It would at all times be subject to the necessities of the railroad. A few rods of his land are taken for a roadway, about which he cares nothing, and for which he receives a mere nominal consideration; but if, as claimed it drags after it this incidental right of cutting drains through any part of his land, he may find his cellar invaded by

the exercise of this right, his door-yard dug up, or his orchard destroyed, as the necessities of the road may from time to time require; for if this right of drainage is obtained by the condemnation, it continues as long as the company uses its easement as a right of way, and has no limit but the necessities of the road.    Thus the incidental right becomes immeasurably greater than the principal.    If it be said that the circumstances suggested are not likely to occur, the answer is, that we are discussing *a right*, and we must see how far it extends before we recognize it as having an existence.    A man ought to hold his land and exercise his right on some safer and better defined basis than the forbearance of a corporation.

But says the counsel, the owner of the land might have appealed from the report of the commissioners.    How could he know what did not appear in the report, but rested only in the breasts of the commissioners?    How could he know what the extent of this necessity for drainage might be?  and what showing could he make on appeal?    His witnesses might not know the necessities created by the building of the railroad.    The counsel, in their brief, say, "That the commissioners could not know, nor any one else, where drains might be found necessary until the road come to be constructed."    If the company with its scientific engineers could not know, how should the unskilled farmer know, and determine whether or not he would appeal? And how could the commissioners know in making up their estimate of damages?    Again, the right of drainage rests on the same basis as the right to use the land for side tracks, depots, etc., and if one passes as an incident of the right of way for a track, then it becomes the interest of the company to actually condemn as little as possible, leaving as much as possible to flow after the fragment condemned.    And where are the rights of an adjacent land-owner?    Stones, sand, earth, and perpetual easement over every portion of his land, are henceforth at the absolute disposal of the company.    The conclusion seems monstrous.    The authorities cited by the plaintiff in error, as we read them, entirely fail to reach the case under consideration. They only go to the extent of saying that such damage as must

necessarily result from the construction of the road, and its protection, by acts done inside the limits condemned, are included in the assessment of damages. That is, where a right of way 100 feet in width has been condemned, whatever damages flow from the proper construction of the road within that limit will be held to have been included in the report, and no others. The court below having entertained the same opinion, and expressed and embodied them in the instructions to the jury, it follows that there was no error therein. The judgment is affirmed.

All the Justices concurring.