JOSEPH CORWIN et al. v. THE ST. LOUIS & SAN FRANCISCO RAILWAY COMPANY.

CONDEMNATION PROCEEDINGS — *Irregularity* — *Estoppel* — *Notice.* Where condemnation proceedings have been properly carried on for the purpose of laying off a route, side tracks, depot grounds, etc., for a railway company, and thereafter the landowner accepts the condemnation money, if there is any mere irregularity in the proceedings with reference to certifying the amount paid in by the railway company to the county treasurer's office, such irregularity, after the acceptance of the amount thereof by the landowner, is fully cured, and will not in any way defeat or avoid the proceedings, and in such a case, any subsequent purchaser of the property so condemned must take notice of the records in the office of the register of deeds, and whatever appears upon the records of every other public office or tribunal of the county having jurisdiction of such proceedings.

*Error from Sedgwick District Court.*

ON the 8th day of April, 1887, *Joseph Corwin* and *W. B. Throckmorton* commenced their action against the *St. Louis & San Francisco Railway Company,* alleging that they were the owners and in the quiet and peaceable possession of three certain lots in Hilton's second addition to Wichita; that the railway company, without any right, threatened and was about to enter and take possession of the premises and dispossess the plaintiffs therefrom, with the intention of permanently appropriating the property to its own use. The plaintiffs asked that the defendant be enjoined and restrained from con-

structing any part of its railroad upon the lots owned by them, necessary for side tracks, depots, workshops, water stations, and turntables. The railway company answered, denying that the plaintiffs were the owners of the property or in the possession thereof, and alleged that the company had been in possession of the lots, and had the lawful right to such possession as the lessee of the St. Louis, Wichita & Western Railway Company, which, prior to that time, on about the 1st of August, 1879, procured the right to the possession of the lots under certain condemnation proceedings; that Cornelia R. Sanders was the owner of the lots at the time of the condemnation proceedings; that she had accepted the award made by the commissioners, and that, consequently, she, as well as her grantees, were estopped from setting up any claim to the lots in controversy.

Trial had at the May term of the court for 1888, without a jury, before Hon. W. P. CAMPBELL, as judge *pro tem.*, who made and filed the following opinion:

"1. The plaintiffs have a good title to the property in controversy, and are entitled to an injunction to restrain the defendant from doing the acts complained of in the petition, unless the defendant has a paramount title growing out of the condemnation proceedings relied upon by the defendant.

"2. In the determination of the force and effect of said condemnation proceedings, and the question whether they confer upon the defendant railroad company the perpetual right to use the property in controversy, it is proper to consider the whole record, including the petition of the St. Louis, Wichita & Western Railway Company to the judge of the district court asking for the appointment of commissioners; the order of such judge appointing such commissioners; the report of the commissioners, and the map and profile filed by said railway company in the office of the county clerk, and referred to in the report of the commissioners.

"3. From such documents it sufficiently appears: First. That it was the desire of said railway company to appropriate sufficient land for a right-of-way for the route or main track of the railroad from the east line of Sedgwick county to and through the city of Wichita, as located by said company, and also such land as might be necessary for side tracks, depots,

workshops and other stations at said city. Second. That said commissioners caused said route to be carefully surveyed, and ascertained carefully the quantity of land necessary for the purposes aforesaid, including side tracks, depots, workshops, and other terminal facilities. Third. What is known in the findings of fact as the Sanders land included the land in controversy, and represented on the map by pale red color, was, in fact, laid off and condemned by said commissioners for the use of said railroad corporation as necessary for such terminal facilities at the city of Wichita. Fourth. The said Cornelia R. Sanders, having accepted the amount of such appraisement, could not now deny the right of said railroad company or its assigns to the land so appropriated for any purpose connected with the operation of its railroad. Fifth. The plaintiffs get no better title by their deed from said Cornelia than the grantor had at the time of its execution. Sixth. It is contended by the plaintiffs that, admitting the condemnation proceedings may have been sufficient to justify the appropriation of the land by the railroad company in first instance, such right has been lost by nonuser and by abandonment. On the question thus raised, the court makes the following conclusions: First. Mere nonuser for any length of time is not sufficient ground for forfeiture, unless accompanied by evidence of actual abandonment, and nonuser for seven years, under the circumstances of this case, is not sufficient evidence of abandonment. Second. The fact that the defendant made temporary arrangements with the Santa Fé company for terminal facilities is not evidence of abandonment. Third. The fact that the defendant corporation failed to list the property for taxation is not cause for forfeiture, and not sufficient evidence of abandonment, under the circumstances of this case. Fourth. The title to the condemned property would not *ipso facto* revert to the original owner by virtue of either of the facts referred to in the third foregoing subdivision, nor by reason of all such facts together. Fifth. Adverse possession by the plaintiffs, together with those under whom it claims, for the term of 15 years, would be necessary to divest the railroad corporation of its right under the condemnation proceedings. Sixth. The plaintiff contends that, notwithstanding the condemnation proceedings may have been sufficient against Cornelia R. Sanders, they cannot avail as against the plaintiffs, who had no actual knowledge of the proceedings, and no actual knowledge of her ac-

ceptance of the amount of the appraisement. This raises the question as to what notice the plaintiffs were entitled to, which it did not receive. It now here appears that the plaintiffs were misled by any act of omission on the part of the defendant or its assignor. The plaintiffs never examined the public records in relation to the condemnation proceedings, and never made any inquiry of anyone representing the defendant or its assignor in relation to the rights of the defendant, and therefore could not have been deceived or misled by the defendant. It is true the defendant's local agent knew that the plaintiffs were making improvements upon the property with a view of its occupancy, and assented thereto; but it does not appear that it was the duty of the agent to represent the defendant in such matters, nor that the agent understood the nature of the plaintiffs' claim, and in that case the court holds that the defendant was not bound by the assent of the local agent. In view of the proceedings, the court holds, first, that the plaintiffs were bound to take notice of the presentation of the petition by the railroad company to the district judge asking for the appointment of the commissioners to lay off and appraise the right-of-way and lands for terminal facilities; second, the appointment and qualifications of the commissioners; third, the proceedings of the commissioners, as shown in their report, and the filing of a copy of the report in the office of the county treasurer; fourth, the filing of a copy of such report in the office of the register of deeds and all the indorsements thereon. These records sufficiently give notice to the public that the property mentioned in the report, including the Sanders lots, had been condemned, paid for and appropriated by the railroad company. The filing of a copy of the report of the commissioners in the register of deeds' office is notice to the owner and all the world that the condemnation money has been paid to the treasurer. The filing of such copy of such report implies such payment. As a matter of fact, the money was not paid to the treasurer at the time the report was filed in the register's office, but this does not destroy the force and effect of such filing as notice. Whether the money has been paid or not is the affair of the owner of the land and no one else. If the owner sees fit to waive the irregularity and treat the money as if paid in, no other person can be said to object. The plaintiffs, having been charged with constructive notice of payment, cannot be heard to say that 'we had notice of the

filing of the report, that the condemnation money had been paid, but we ascertained upon inquiry that the money was not actually paid until 14 days after the report was filed, and the money was not accepted by the owner of the property until several days after it was paid to the treasurer, and therefore we choose to consider ourselves purchasers without notice.' The plaintiffs cannot complain that they were misled by the record as made in the register's office, because they never examined the record. Upon the whole, there was sufficient upon the entire record properly and regularly made to put plaintiffs upon inquiry, and they might easily have ascertained the fact of the payment of the money to Mrs. Sanders, and its receipt by her in full satisfaction of her claim for damages by reason of the appropriation of her land. Seventh. The court concludes finally, that at the time Cornelia R. Sanders executed her deed conveying her lots in controversy to the plaintiffs, she had been divested of her title with her own assent by the condemnation proceedings carried on by the defendant assignor, and the plaintiffs, being charged with notice of such proceedings, get nothing by their deed as against the defendant, and the title of the defendant is paramount to that of the plaintiffs, and the plaintiffs are not entitled to the relief demanded in the petition."

The trial court, having found the issues of fact and its conclusions of law for the railway company, refused the relief prayed for in the petition, and rendered judgment against the plaintiffs, and in favor of the defendant for costs. The plaintiffs excepted and bring the case here.

*Stanley & Hume*, for plaintiffs in error.

*Geo. R. Peck, A. A. Hurd*, and *Robert Dunlap*, for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: Lots 17 and 19, on Cannon street, and lot 20, on St. John street, in Hilton's second addition to the city of Wichita, is the property in controversy in this case. These lots were formerly owned by Mrs. Cornelia R. Sanders. The plaintiffs claim them, or a part thereof, by virtue of a conveyance from her and her husband, W. D. Sanders. The

railway company claims an easement over and upon the property by condemnation proceedings carried on by the St. Louis, Wichita & Western Railway Company, which were prior to the conveyance from Mrs. Cornelia R. Sanders and her husband.   The principal questions in this case for determination are: First, was an easement over and upon the land in controversy ever obtained by the St. Louis, Wichita & Western Railway Company by virtue of the condemnation proceedings alleged in the defendant's answer?   Second, were the plaintiffs estopped from asserting any claim as against the easement of the railway company over and upon the property, by reason of the acceptance by Cornelia R. Sanders of the award made by the commissioners and the public records concerning the condemnation proceedings?   The fee of the lots is not in dispute.

The contention is over the real estate condemned for side tracks, depots, workshops, water stations, and turntables, the claim of the plaintiffs being that the route laid off in the condemnation proceedings did not exceed 100 feet in width. We think that an easement over and upon all of the lots in dispute was appropriated for the route of the railroad, side tracks, depot grounds, etc.   But little, if anything, need be added to the able opinion filed by the trial judge, embraced in the statement.   The commissioners appointed by the district judge of Sedgwick county, in their written report, stated that they

"Proceeded to lay off such route, side tracks, etc., for such distance through said county as was desired by the company, the width of the same being such as was desired by the company, and upon the location, all of which is more particularly described in the plat and profile of the route intended to be adopted by the company in said county, and on the 6th day of September, 1879, filed by the company in the office of the county clerk of Sedgwick county; that we had the same route carefully surveyed, and ascertained the quantity of land necessary for the purposes aforesaid out of each quarter section or other lot of land in said county, through which said route, and on which said side tracks, depots, workshops and

water stations were located, and appraised the value of such portion," etc.

The lots belonging to Mrs. Sanders were specifically described in the report, and are stated to be valued at $25 each, and the appraisement of value and assessment of damages on each lot is of its full value—that is, $25. Therefore, Mrs. Sanders, or anyone else, examining the report, would clearly understand that all the lots named, for which the full value was allowed, were actually appropriated. The commissioners would not, in the nature of things, allow for an easement over and upon a part of a lot as much value or damage as if the whole lot were taken; but, as they allowed the whole value, this of itself shows that an easement over the whole was taken. Then, again, an examination of the report shows that, where only a part of a lot was taken, the part so taken is fully described therein. We copy from the report of the condemnation proceedings, filed in the office of the register of deeds of Sedgwick county, of December 20, 1877, the following:

"For an accurate description of each tract or lot of land reference is hereby made to the following table.

[ See next page.]

Corwin v. St. L. & S. F. Rly. Co.

| NAME OF OWNER. | Number. | Name of Street. | No. of Lot. | Value of Lot. | Value of improve-ments. | Amount of dam-ages. | Total Amt. of Appraisement and Assessment. | Amt. of Taxes. | Name of Mort-gagee. |
|---|---|---|---|---|---|---|---|---|---|
| * * * * | * | * * * | * * | * * | * * | * * | * * | * * | |
| Cornelia R. Sanders. (Hilton's 2nd Add.) | * | St. John | 20 | 25.00 | .00 | .00 | 25.00 | | |
| * * * * | * | * * * | * * | * * | * * | * * | * * | * * | * * * |
| Cornelia R. Sanders. (Hilton's 2nd Add.) | * | Cannon | 17 | 25.00 | .00 | .00 | 25.00 | | |
| | | " | 19 | 25.00 | .00 | .00 | 25.00 | | |
| * * * * | * | * * * | * * | * * | * * | * * | * * | * * | * * * |

Anna McClure. (Shuman's Add.) 97 Central And so much of the lots 1 and 3 as be within the boundary line of the right of way of the St. Louis, Wichita and Western Railway, as now located through said addition, as will more fully appear by the reference to the original plat on file in the office of the county clerk.

| | | | | 50.00 | .00 | 50.00 | 100.00 | 5.95 | |

Dan'l Cohen. (Shuman's Add.) Central 13 25.00 .00 .00 25.00 1.48 " " And so much of lots 15 and 17 as lie within the boundary line of the right of way of the St. Louis, Wichita and Western Railway as now located through said addition, as will more fully appear by reference to the original plat on file in the office of the county clerk.

| | | | | 50.00 | .00 | 50.00 | 100.00 | 2.68 | |

| * * * * | * | * * * | * * | * * | * * | * * | * * | * * | * * * |

Emma Harris. Chicago So much of the lots 10 and 12 as lie within the boundary line of the right of way of the St. Louis, Wichita and Western Railway as now located through said addition, as will more fully appear by reference to the original plat on file in the office of the county clerk.

| | | | | 15.00 | .00 | .00 | 15.00 | | G. R. Miller, trustee, $620.00, with other property. |

Anna McClure. (Shuman's Add.) So much of Shuman's Reserve as lies within the route and boundary line of the right of way of the St. Louis, Wichita and Western Railway as now located through said addition, as will more fully appear by reference to the original plat on file in the office of the county clerk.

| | | | | 37-100 Acres | | | 20.00 | 2.30 | |

Subsequently, Mrs. Sanders accepted the condemnation money. Clearly, she was thereafter estopped from raising any objections to any mere irregularity in the condemnation proceedings. The railway company, by virtue of such proceedings, obtained the right of easement or occupation of the lots described in the report. The report of the commissioners in the condemnation proceedings was filed in the office of the county clerk of Sedgwick county on the 6th of December, 1879. It referred to the map and profile filed by the railway company in the office of the county clerk. On December 18, 1879, a copy of the report was filed with the county treasurer. As Mrs. Sanders accepted the condemnation money, if there was any delay with reference to certifying the amounts paid in by the railway company to the county treasurer's office, such delay or irregularity would not in any way defeat or avoid such proceedings. Of course, her acceptance would not enlarge the easement or estate condemned, and no such claim is made by anyone. The plaintiffs purchased the lots of Wm. C. Woodman and wife on the 4th day of June, 1886, and Woodman purchased of Mrs. Sanders the lots subsequently to the condemnation proceedings.

*Condemnation proceedings — irregularity — estoppel — notice.*

In *Challiss v. Railroad Co.*, 16 Kas. 117, 129, it is said:

"Now, as to such proceedings, a party may not trust entirely to the records of the office of register of deeds, but must take notice of whatever appears upon the records of every officer or tribunal having jurisdiction of such proceedings."

In *Hunt v. Smith*, 9 Kas. 138, it is said that the land mentioned in the report cannot vary from that shown by the map and profile of the company filed in the county clerk's office, and that such map and profile make it definite and certain what land is appropriated. (*Railroad Co. v. Commissioners,* 14 Gray, 554; *Hazen v. Railroad Co.*, 2 id. 574; *Inhabitants of Andover v. Commissioners,* 5 id. 393; *Railroad Co. v. Kellogg,* 54 Mo. 334.) Under the condemnation proceedings, all of which were of record in the public offices of Sedg-

wick county, Woodman, the purchaser from Mrs. Sanders, and the plaintiffs, who hold under Woodman, had constructive notice that an easement over and upon all the lots which they purchased had been legally appropriated for railroad purposes. For some reason, they never examined the public records. Had they made an examination of the report on file in the office of the register of deeds, they would have had actual notice of the appropriation of all of the lots. The condemnation proceedings appearing upon the public records are as conclusive as to them as to Mrs. Sanders.

Various other questions are discussed in the briefs, but in view of the opinion of the trial judge, to which reference has been made, we think it unnecessary to further comment upon the case.

The case of *The State v. Armell,* 8 Kas. 288, to which we are referred by the attorneys of plaintiffs, has no application, in our opinion, in this case, because in that case the commissioners expressly condemned a right-of-way 100 feet in width through the land of Blackshire, and made no other condemnation whatever. No mention was made in their report of any other right than the 100 feet. In that case, it is not shown that the railroad company paid full value for all the land of Blackshire, but on the other hand it is positively shown that only 100 feet in width thereof was taken. In the language of the opinion, "That is just what was condemned, what was paid for, and beyond that limit the railroad company obtained no right whatever, not even an easement to run a wheelbarrow over the adjacent land to repair the road."

The judgment of the district court will be affirmed.

JOHNSTON, J., concurring.

ALLEN, J., dissenting: I am unable to concur in the decision in this case. A railroad company can only condemn lands for some specific purpose authorized by the statute, and to supply a present necessity. It cannot condemn a title in fee simple, nor a future use. (*Insurance Co. v. DeCamp,* 47 N. J. L. 518, 4 Atl. Rep. 318; *Toledo &c. Rld. Co. v. D. L. &*

*N. Rld. Co.*, 62 Mich. 564.)   The findings show that the lots in controversy were outside the 100 feet required for right-of-way; that there was nothing either in the report of the commissioners or on the plat to indicate the purpose for which these lots were sought to be taken, and the company failed to occupy them for any purpose for seven years after the report was filed.   In my judgment, no use of these lots was condemned, and certainly the fee was not acquired.   As said by Chief Justice KINGMAN, in *The State v. Armell*, 8 Kas. 288, "When the rights or easements are taken by condemnation, the proceedings must show definitely and precisely what is taken, and what the owner parts with.   Nothing is taken by implication or intendment."

The acceptance by Mrs. Sanders of the condemnation money cannot operate to enlarge the estate acquired by the condemnation.   The principle here involved is the same as that in *Alt v. Banholzer*, 39 Minn. 511, which holds that "covenants in a deed can have no greater validity than the deed itself, and in order that such covenants may work an estoppel, the deed itself must be a valid instrument." (See, also, 22 Am. Rep. 207.)   "To create an equitable estoppel, the person sought to be estopped must do some act or make some admission to influence the conduct of another, which act or admission is inconsistent with the claim he proposes now to make, and the other party must have acted on the strength of such act or omission." (*Rubber Co. v. Rothery*, 107 N. Y. 310; *Gillett v. Wiley*, 126 Ill. 310; *Wheaton v. Insurance Co.*, 76 Cal. 415.)

The acceptance by Mrs. Sanders of the condemnation money could not operate by estoppel or in any other manner to enlarge the estate acquired by the condemnation proceedings.   It might be a waiver of mere irregularities in the proceedings, but nothing more.